# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

KENNETH JEROME PACKNETT,

Plaintiff,

v.

FERNAND ALVAREZ, et al.,

Defendants.

Case No. 15-cv-01229-YGR (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND MOTION TO DISMISS; AND
DENYING PLAINTIFF'S REQUEST
FOR A SEVENTH EXTENSION OF
TIME TO FILE A COMPLETE
OPPOSITION**

## I.    INTRODUCTION

This is a *pro se* civil rights action filed by Plaintiff Kenneth Jerome Packnett, a state prisoner, pursuant to 42 U.S.C. § 1983, alleging constitutional violations and state law claims during his previous incarceration at San Quentin State Prison ("SQSP") from November through December 2012. Dkt. 1. Plaintiff, who purports to suffer from mobility impairment and a severe back disorder, alleges numerous claims stemming from his November 2012 sub-facility transfer from H-Unit Facility B to South Block, prior to which he had no Unit Classification Committee ("UCC") hearing. The alleged constitutional violations at SQSP ended on December 26, 2012, when Plaintiff was transferred from SQSP to R. J. Donovan Correctional Facility ("RJDCF"), with layovers at the California Training Facility ("CTF") and the California Institution for Men ("CIM"). Plaintiff seeks monetary and punitive damages, as well as declaratory relief.

In his original complaint, Plaintiff named the following Defendants at SQSP: Doctors Fernand Alvarez and Alison Pachynski; Correctional Counselors B. Martin and F. Gray; Acting Facility Captain V. Wiggins; Classification Staff Representative B. Powell; and Appeals Coordinators S. Hays and M. L. Davis. He also named the following Defendants at CIM: Associate Warden D. King; Chief Deputy Warden M. M. Hill; Appeal Examiner R. Briggs; and Warden "John Doe." Finally, he named the following Defendants at RJDCF: Warden Daniel Paramo; Doctors G. Casian, K. Seeley, Robert Medrano, and J. Nickolic; Third Level of Appeals Chief J. D. Lozano; and Office of Appeals Chief L. D. Zamora.

In an Order dated July 10, 2015, the Court screened Plaintiff's original complaint and

ordered as follows:

> 1. Plaintiff's claims relating to all problems during his incarceration at CIM were dismissed without prejudice to Plaintiff refiling them in a new civil rights action in the Eastern Division of the United States District Court for the Central District of California.

> 2. Plaintiff's claims relating to all problems during his incarceration at RJDCF were dismissed without prejudice to Plaintiff refiling them in a new civil rights action in the United States District Court for the Southern District of California.

> 3. Plaintiff's disability discrimination claim against Defendants Alvarez, Pachynski, Martin, Wiggins, Gray, and Powell, who are individual prison officials, were dismissed with prejudice. If Plaintiff had chosen instead to name SQSP and the CDCR as Defendants, then his ADA and Section 504 claims against these public entitles would have been dismissed with leave to amend. Plaintiff was directed that he may file an amended disability discrimination claim within twenty-eight days of the Court's July 10, 2015 Order. Plaintiff was instructed that he "shall resubmit only that claim and not the entire complaint." He was instructed further that the amended claim must be submitted as an amendment to the complaint, that it must include the caption as well as the civil case number of this action (C 15-1229 YGR (PR)), and that it must include the words "AMENDMENT TO THE COMPLAINT" on the first page. Plaintiff was warned that the failure to do so would result in the dismissal without prejudice of Plaintiff's disability discrimination claim.

> 4. Plaintiff stated cognizable Eighth Amendment claims for deliberate indifference to serious medical needs against Defendants Alvarez, Pachynski, Martin, Wiggins, Gray, and Powell.

> 5. Plaintiff's claim of conspiracy against Defendants Alvarez, Martin, Wiggins, and Gray was dismissed without prejudice.

> 6. Plaintiff stated a cognizable First Amendment retaliation claim against Defendants Alvarez, Martin, Wiggins, and Gray.

> 7. Plaintiff's claims relating to a violation of his rights under the *Armstrong* Remedial Plan were dismissed without prejudice.

> 8. Plaintiff stated a cognizable due process claim relating to the prison grievance system against Defendants Hays and Davis.

> 9. The Court exercised supplemental jurisdiction over Plaintiff's state law claims.

*See* Dkt. 5 at 11-12.

The Court then directed the Clerk to serve the complaint and issued a briefing schedule for the served Defendants to file a dispositive motion. *See id.* at 12-15.

On April 20, 2016, the Court screened Plaintiff's Amendment to the Complaint only as to Plaintiff's ADA and Section 504 claims against SQSP and the California Department of Corrections and Rehabilitation ("CDCR") and dismissed those claims without further leave to amend. All other claims in the Amendment to the Complaint were not reviewed, and the Court noted that Plaintiff's disability discrimination claims against Defendants Alvarez, Pachynski, Martin, Wiggins, Gray, and Powell previously had been dismissed with prejudice. The Court then directed the parties to abide by a new briefing schedule.

The parties are presently before the Court on Defendants' dispositive motion. Dkt. 47. Defendants move this Court to dismiss Plaintiff's claims against Defendants Davis and Hay, because Plaintiff cannot state a cause of action against these Defendants merely for their involvement with Plaintiff's grievances. *Id.* at 25-27. Defendants also move for summary judgment as to the state and federal claims on the following grounds: (1) failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); and (2) failure to comply with the California Tort Claims Act. *Id.* at 13-25. Plaintiff, although granted the opportunity to do so, has filed what he considers an incomplete opposition to Defendants' motion,[1] and Defendants filed their reply. Dkts. 74, 76.

Having read and considered the papers submitted in connection with this matter, the Court

---

[1] On the final page of his five-page opposition filed on August 14, 2017, *see* dkt. 74 at 5, Plaintiff claims that he was "unable to finish" his opposition, even though he has been granted six extensions of time to do so, *see* dkts. 57, 61, 65, 68, 70, 72. While Plaintiff has had an abundance of time to file a ***complete*** opposition to Defendants' motion by the latest deadline of August 7, 2017, he has failed to do so. On August 23, 2017, Plaintiff sent a letter to the Court claiming that his attempts to finish his opposition had been "compromised" due to an alleged lack of law library access. Dkt. 75 at 1-2. On August 31, 2017, Plaintiff filed a request for a seventh extension of time to file a complete opposition. Dkt. 77. Defendants filed an opposition to the extension request, and they submitted law library attendance records from Senior Librarian Y. Cheng demonstrating that Plaintiff visited the law library approximately eighty-six times from September 2016 through August 2017. Cheng Decl. ¶ 7, Ex. A. The Court finds that Plaintiff has had an overwhelming amount of time from the six extensions—equating to almost ten months' worth of extensions—to file his opposition, because the original due date was October 11, 2016. There is also ample evidence showing that Plaintiff had extensive access to the law library in order to complete his opposition during the last eleven months. *See id.* Therefore, the Court DENIES Plaintiff's request for a seventh extension of time to file a complete opposition. Dkt. 77. In the absence of what Plaintiff considers to be a complete opposition, the Court explains below that it has relied upon the allegations in Plaintiff's verified complaint in opposition to Defendants' motion, *see* Dkt. 1, and, as required under the case law, has construed all facts in the light most favorable to Plaintiff, *see Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).

3

hereby GRANTS Defendants' motion for summary judgment and motion to dismiss.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The central issue presented in Defendants' summary judgment motion is whether Plaintiff properly exhausted his administrative remedies as to his federal claims. Before turning to the facts of this case, the Court briefly reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

### A.    Legal Framework

The PLRA requires a prisoner to exhaust all "available administrative remedies" before bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies neither need to meet federal standards, nor must they be "plain, speedy, and effective." *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). The PLRA requires *proper* exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to exhaust properly. *Id.*

The CDCR provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. Cal. Code Regs. tit. 15, § 3084.1(e). Health-care appeals are handled separately from grievances concerning the actions of custody staff. Voong Decl. ¶ 3.

On January 28, 2011, certain revisions to the California prison regulations governing inmate grievances became operative. *See* History, Note 11, Cal. Code Regs. tit. 15, § 3084.2. In

order to exhaust all available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 ("602 appeal") and proceed through three levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee (i.e., "Director's level"). Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7. Under specific circumstances, the first level review may be bypassed. *Id.* The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. *Id.* § 3084.7(d)(3). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005); *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002).

The level of detail in an administrative grievance necessary to exhaust a claim properly is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The level of specificity required in the appeal is described in the California Code of Regulations as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added).

Inmates have "30 calendar days" to submit a grievance (using the prescribed CDCR Form 602) from the "occurrence of the event or the decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b)(1). The appeals coordinator can reject or "screen out" an appeal for various reasons, including failure to comply with the time limit, omission of necessary supporting documents, or duplication of a previous appeal. *Id.* § 3084.3(c). When the grievance is not rejected or screened out, the inmate must pursue the grievance through each level of review to exhaust remedies. *Id.* § 3084.5. A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." *Id.* § 3084.1(b).

**B.** **Factual Summary**[2]

    **1.** **The *Armstrong* Plan for Accommodating Disabled Inmates**

*Armstrong v. Brown*, N. D. Cal. No. C 94-2307 CW ("*Armstrong*"), is a class action

concerning disability accommodations for prisoners and parolees in the CDCR. The *Armstrong*

"court ordered Remedial Plan," as amended January 3, 2001 ("*Armstrong* Remedial Plan"),

requires the CDCR "to ensure that prisoners and parolees with disabilities are accessibly housed,

that they are able to obtain and keep necessary assistive devices, and that they receive effective

communication regarding accommodations."[3] *Armstrong v. Brown*, No. 94-2307 CW, Docket #

1974 (Order filed January 13, 2012). The *Armstrong* Remedial Plan provides:

> The Disability Placement Program (DPP) is the Department's set of
> plans, policies, and procedures to assure nondiscrimination against
> inmates/parolees with disabilities. The DPP applies to all of the
> Department's institutions/facilities, all programs that the Department
> provides or operates, and to all inmates who have disabilities that
> affect a major life activity whether or not the disabilities impact
> placement.

---

[2] This Order contains many acronyms and certain disability codes. Here, in one place, they
are:

| | |
|---|---|
| ADA | Americans with Disabilities Act of 1990 |
| CCHCS | California Correctional Health Care Services |
| CIM | California Institution for Men |
| CMO | Chief Medical Officer |
| DPP | Disability Placement Program |
| DPPV | Disability Placement Program Verification |
| DNM or ADA/DNM | Mobility-Impairment (Lower Extremities) |
| DPM, DPP/DPM, ADA/DPM | Mobility-Impairment (With or Without Assistive Device) |
| HCARTS | Health Care Appeals and Risk Tracking System |
| ICAB | Inmate Correspondence and Appeals Branch |
| MRI | Magnetic Resonance Imaging |
| OOA | Office of Appeals |
| PCP | Primary Care Provider |
| UCC | Unit Classification Committee |
| UHR | Unit Health Record |

[3] The Court GRANTS Defendants' Request for Judicial Notice ("Defs. RJN"). Dkt. 53. A
district court "may take notice of proceedings in other courts, both within and without the federal
judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*,
508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations omitted) (granting
request to take judicial notice in section 1983 action of five prior cases in which plaintiff was *pro
se* litigant, to counter her argument that she deserved special treatment because of her *pro se*
status). Accordingly, the Court takes judicial notice of the Court Ordered Remedial Plan
Amended, dated January 3, 2001, in *Armstrong v. Brown, et al.*, No. C 94-2307 CW (N.D. Cal.),
attached as Exhibit A to Defs. RJN.

Although the program covers all inmates/parolees with disabilities, whether or not they require special placement or other accommodation, it is facilitated in part through "clustering" or designating accessible sites (designated facilities) for qualified inmates requiring special placement. Inmates with permanent mobility, hearing, vision, and speech impairments, or other disability or compound conditions severe enough to require special housing and programming, will be assigned to special placement in a designated DPP facility. Inmates with a permanent impairment of lesser severity, learning disability, or a kidney disability, may be assigned to any of the Department's institutions/facilities (designated DPP institutions or nondesignated DPP institutions) consistent with existing case factors.

Dkt. 53-1 at 3.

The CDCR makes use of an inmate disability verification form (i.e., a CDCR Form 1845) to record an inmate's disabilities. The form was revised in January 2004, and it is called the Disability Placement Program Verification ("DPPV").

The 2004 version has five sections: § A - reason for initiation of form; § B - disability being evaluated, i.e., categories of disability; § C - permanent disabilities impacting placement; § D - permanent disabilities *not* impacting placement; and § E - additional medical information. Each section has several boxes that could be checked. For example, section C's "permanent disabilities impacting placement" provides the following choices:

1. ❑ FULL TIME WHEELCHAIR USER - DPW. . .
2. ❑ INTERMITTENT WHEELCHAIR USER - DPO . . .
3. ❑ MOBILITY IMPAIRMENT - DPM
   - With or Without Assistive Device
   (Wheelchairs shall not be prescribed)
   Orthopedic, neurological or medical condition that substantially limits ambulation (cannot walk 100 yards on a level surface without pause). Requires lower bunk, no triple bunk, and no stairs in path of travel.
4. ❑ DEAF/HEARING IMPAIRMENT - DPH . . .
5. ❑ BLIND/VISION IMPAIRMENT - DPV . . .
6. ❑ SPEECH IMPAIRMENT - DPS . . .

*See* Dkt. 49-6 at 18. Meanwhile, the column to the right—section C's "permanent disabilities ***not*** impacting placement,"—lists these choices:

1. ❑ NO CORRESPONDING CATEGORY
2. ❑ NO CORRESPONDING CATEGORY
3. ❑ MOBILITY IMPAIRMENT – DNM
   (Lower Extremities)
   (Walks 100 yards without pause with our without

assisted devices) . . .
4. ❑ HEARING IMPAIRMENT - DPH . . .
5. ❑ NO CORRESPONDING CATEGORY
6. ❑ SPEECH IMPAIRMENT - DPS . . .

*See id.*

## 2. Plaintiff's Cognizable Claims

In his verified complaint, Plaintiff alleged that he suffers from mobility impairment and severe back disorder. Dkt. 1 at 4. On October 17, 2011, Plaintiff originally was classified at SQSP under "MOBILITY IMPAIRMENT – DNM (Lower Extremities)," with housing restrictions of "lower bunk" and "no triple bunk." *Id.* at 7; Dkt. 49-6 at 22. However, on November 7, 2012, Defendant Alvarez recommended a change in his mobility restrictions and classified him as "MOBILITY IMPAIRMENT – DPM" or "DPP/DPM" status with housing restrictions of "lower bunk," "no stairs," and "no triple bunk." Dkt. 49-6 at 18. Plaintiff claims that Defendant Alvarez "made this accessment [sic] without a physical examination of Plaintiff nor was there any discussion of the totality of the Plaintiff's overall medical needs, specifically ignoring the spinal canal disorder," as required by the *Armstrong* Remedial Plan. Dkt. 1 at 10-11. Plaintiff claims that classifying him as a "DPP/DPM" status "would require transfer to a[n] identified DPP institution, other than remaining at [SQSP]." Dkt. 1-2 at 6. On November 8, 2012, Plaintiff was transferred from H-Unit Facility B to South Block. *Id.*

On November 15, 2012, Defendant Pachynski was assigned as Plaintiff's new PCP. Dkt. 1 at 14.

On November 19, 2012,[4] Plaintiff appeared before the "West Block Unit Classification Committee," during which he was shown the November 7, 2012 change in chrono[5] authored by Defendant Alvarez. Dkt. 1 at 6; Dkt. 1-9 at 13.

Defendant Pachynski interviewed Plaintiff on November 16, 2012 and December 6, 2012,

---

[4] Although Plaintiff claims that the UCC hearing occurred on November *12*, 2012, dkt. 1-2 at 8, the record indicates that the hearing occurred on November *19*, 2012, as reflected in the "Classification: UCC Annual Review" form (which summarizes the hearing) dated November 19, 2012 date, dkt. 1-9 at 13.

[5] A "chrono" is a form that allows prisoners to request certain medical accommodations as deemed necessary by medical staff.

and informed him that they would "keep him on his DPM status and medical supervisors are to be notified that it will not be changed . . . ." Dkt. 1-2 at 10.

On December 26, 2012, Plaintiff discovered that he was going to be transferred to RJDCF, and he subsequently was transported to RJDCF by way of an extended bus ride. Dkt. 1 at 25.

Plaintiff claimed that Defendants Alvarez, Pachynski, Martin, Wiggins, Gray, and Powell were deliberately indifferent to his serious medical needs from November through December 2012 for: (a) increasing his mobility restrictions and causing his transfer from H-Unit Facility B to South Block without any UCC hearing prior to the transfer (dkt. 1 at 48-49); (b) refusing to refer him for pain management consultation and rejecting his complaints of back pain (*id.* at 49-50, 53-54); and (c) exposing him to "extended travel by state transportation bus, where [he] was injured in a manner significantly more different from and greater tha[n] it would injure a non-disabled inmate, particularly, one with a significant back disorder" (*id.* at 57). As mentioned above, the Court found that, liberally construed, Plaintiff's allegations relating to the aforementioned actions stated a cognizable claim for deliberate indifference to his serious medical needs against Defendants Alvarez, Pachynski, Martin, Wiggins, Gray, and Powell.

Plaintiff also alleged that Defendants Alvarez and Martin "conspired to retaliate against Plaintiff by: (a) refusing to notify the assigned H-Unit Correctional Counselor I of mobility change to classify Plaintiff under DPP/DPM status, preventing Plaintiff from being seen before a UCC; (b) failed to notify [him] of increase [to DPP/DPM Status]; (c) failed to notice PCP & request for an H&P[6]; (d) improperly removed [him] from H-Unit to South Block to isolate [him] from access to H-Unit personnel; and (e) engaging in an egregious abuse of power and to punish Plaintiff for maintaining [a] civil rights action against [Sergeant] Wingo, *see Packnett v. Wingo*, CIV-09-0327-YGR (PR)." Dkt. 1 at 50-51. Plaintiff further alleged that Defendants Alvarez, Wiggins, and Gray "set up a retaliatory sub-facility transfer, used to set up a prison to prison transfer to [RJDCF's] Ad/S[e]g" to punish him for filing his previous lawsuit against Sergeant Wingo. *Id.* at 56. The Court found that, liberally construed, Plaintiff's allegations satisfied the

---

[6] H&P is medical shorthand for history and physical, the initial clinical evaluation and examination of the patient.

pleading requirements for a First Amendment retaliation claim against Defendants Alvarez, Martin, Wiggins, and Gray.

### 3. Plaintiff's Health-Care Appeals

Effective August 1, 2008, health-care appeals involving inmate medical, dental, and mental health-care issues have been processed by the California Correctional Health Care Services ("CCHCS"). Robinson Decl. ¶ 3. The Inmate Correspondence and Appeals Branch ("ICAB") is the section of the CCCHCS that receives and maintains all health-care appeals accepted for third-level review and renders decisions on such appeals. *Id.*

All levels of health-care appeals are tracked through a computer database known as the Health Care Appeals and Risk Tracking System ("HCARTS"). *Id.* ¶ 4. This system tracks inmate health-care appeals that are processed by the institutions at the first and second levels of review, as well as those processed by the ICAB and adjudicated at the third level. *Id.* HCARTS also tracks health-care appeals that were received and ultimately rejected, and the reason for the rejection. *Id.* The HCARTS is kept as a regularly conducted activity, and the computer entries are made at or near the time of the occurrence by the employee who processes the health-care appeal. *Id.*

ICAB personnel searched Plaintiff's appeal file for any health-care appeals submitted to the ICAB from 2008 to February 2016. *Id.* ¶ 7, *see id.*, Ex. A. That review revealed that Plaintiff had submitted five health-care appeals to the ICAB that were accepted for review and received a decision from the ICAB. *Id.* ¶ 8. These health-care appeals, which were submitted after Plaintiff had been transferred from SQSP to RJDCF, include RJD HC 15053622, RJD SC 15001414, RJD HC 14051288, RJD HC 13048787, and RJD HC 13048229. *Id.* Besides these five health-care appeals, the record shows that Plaintiff did not exhaust any other appeals at the ICAB after November 2012. *Id.* ¶ 14. The record also shows that Plaintiff submitted one other relevant health-care appeal, RJD HC 13048179, which was cancelled at the first level of review. *Id.*, Ex. F. The Court elaborates on these aforementioned relevant health-care appeals below.

### a. Health-Care Appeal Log No. RJD HC 13048179 ("RJD HC 13048179")

Because there are some timeliness issues as to RJD HC 13048179, the Court first includes the following brief time line relating to Plaintiff's Eighth Amendment claims:

10/17/2011      - Plaintiff was originally classified as DPM status.

11/7/2012       - Defendant Alvarez reclassified Plaintiff as DPP/DPM status.

11/8/2012       - Plaintiff was transferred from H-Unit Facility B to South Block.

11/15/2012      - Plaintiff assigned Defendant Pachynski as his new PCP.

11/19/2012      - Hearing during which Plaintiff sees November 7, 2012 change in chrono.

11/16/2012
& 12/6/2012    - Defendant Pachynski said they would "keep him on his DPM status."

12/26/2012     - Plaintiff discovered that he was going to be transferred to RJDCF.

Prior to submitting RJD HC 13048179, Plaintiff submitted some relevant prison forms relating to his Eighth Amendment claims.

First, on December 10, 2012, Plaintiff filed an Inmate/Parolee Request for Interview, Item or Service (CDCR Form 22) addressed to SQSP Chief Medical Officer E. Tootell, M.D., in which he requested re-evaluation of Defendant Alvarez's November 7, 2012 change in chrono to DPP/DPM status. Dkt. 1 at 15; Dkt. 1-3 at 12.

Also on December 10, 2012, Plaintiff filed a Health Care Service Request Form (CDCR Form 7362), in which he again requested for the review of Defendant Alvarez's November 7, 2012 change in chrono to DPP/DPM status. Dkt. 1 at 22; Dkt. 1-3 at 13.

On December 13, 2012, Plaintiff received an "Inmate Health Care Correspondence Assignment Notice," which was labeled "Correspondence SQP-C-12-11182 by Inmate PACKNETT (C94858) Tracking Number: IA-11-2012-11182." Dkt. 1-3 at 14. The assignment notice stated that it "act[ed] as a notice to [Plaintiff] that [his] correspondence ha[d] been assigned to the Health Care Correspondence Office for a response." *Id.* The notice also indicated a "due date" of "1/25/2013." *Id.* However, Plaintiff claims he did not receive any response by the January 25, 2013 due date. *Id.*

On December 14, 2012, Plaintiff received a letter from SQSP Registered Nurse N. Podolsky labeled "Subject: CORRESPONDENCE RECEIVED DECEMBER 12, 2012 (LOG # SQP-C-12-11182)." Dkt. 1-4 at 3. Nurse Podolsky informed Plaintiff that his CDCR Form 22

(addressed to Dr. Tootell) requesting that his DPM status be re-evaluated was "not the appropriate method of communicating with a medical professional or requesting to have [his] DPM status reevaluated." *Id.* Nurse Podolsky directed Plaintiff instead to submit a CDCR Form 7362. *Id.* The Court notes that Plaintiff already had submitted a CDCR Form 7362 on December 10, 2012. *See* Dkt. 1 at 22; Dkt. 1-3 at 13. As mentioned above, Plaintiff claims that he did not receive a timely response to his CDCR Form 7362. Dkt. 1 at 23.

On April 4, 2013, Plaintiff submitted RJD HC 13048179 concerning his desire for a re-evaluation of Defendant Alvarez's November 7, 2012 change in chrono to DPP/DPM status, as well as other multiple issues relating to his Eighth Amendment claims. Robinson Decl., Ex. F. Plaintiff specifically lists the following issues:

> 1. DPPV status I.D.'ed 10-17-11 by PCP and [Chief Medical Officer ("CMO")]; (Att A)[;]
>
> 2. 11-16-12, abruptly rehoused w/out warning to South Block, taken to UCC, 1st given notice increase [DPPV] change from DNM to DPM. (Att B) Dr. Alvarez never physically examined, interviewed nor evaluated the totality of medical status as a High Risk Patient[;]
>
> 3. Alvarez was a non-treating, non-specialist physician who was not [Plaintiff's] PCPC, was not assigned to H-Unit, did not treat H-Unit [inmates], did not make any objective, vital sign observations or clinical assessments of complex medical needs; (Att C);
>
> 4. A Re-evaluation requested via 7362 slip not responded to[], SQP-C-12-11182, Tracking No. IA-11-2012-11182; (Att D) Request for CMO review rejected[;]
>
> 5. Appellant was entitled to an examination & consult recommendation based upon high risk medical history. Alvarez's unlawful, unethical & unprofessional misconduct created a punitive family hardship (wife in Oakland); created twelve (12) hour[] bus ride with no water or [bowel movement] access;
>
> 6. Layed over [at] CIM, was denied a bunk and CPA[P][7] Machine; Housed in Security Cage until 0330 hrs; Blood Sugar 39 [milligrams per deciliter (mg/dL)] per finger-stick; Given 1 Lunch BS 49 [mg/dL], made to eat another lunch, BS Stabilized at 80 [mg/dL];

---

[7] "CPAP" stands for Continuous Positive Airway Pressure, and CPAP therapy treats sleep apnea. *See* https://en.wikipedia.org/wiki/Positive_airway_pressure (last accessed Aug. 12, 2017).

7.  Experienced heavy dizziness, numbness in legs, re-aggravating back disorder[:] a) Multilevel disk disease with severe canal stenosis; b) Severe Bilateral [Foramina] Narrowing with Nerve/Root Impingement, per MRI scan dated June 3, 2011.  No surgery needed at that time per Neurology.

*Id.*  Plaintiff requested that the CDCR treat his appeal as a "Medical Staff Complaint, CCR § 3084.9(i)," and that he be awarded "compensation for pain and suffering."  *Id.*

On April 8, 2013, RJD HC 13048179 was "cancelled" on the form at the first level of review.  *Id.*  On April 10, 2013, Plaintiff was sent a letter from SQSP Health Care Appeals Coordinator C. Harless, stating:

Your appeal is being cancelled and returned to you for the following reason(s):

**Time Constraints: Level to Level:** CCR, Title 15, 3084.6(c)(4) states, "Time limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints."

There has been too great a TIME LAPSE between the action or decision occurred (October 17, 2013[8]) and when you filed your appeal (April 4, 2013) with no exception of why you did not or could not file in a timely fashion.  The time limit expired per revised CCR 3084.6(c)(4) (30 days).  Should you require further health services, please submit a Request for Health Care Services (CDC Form 7362) to obtain an appointment with a clinician.  **Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.**  However, you may file a separate appeal regarding the cancellation decision to the Health Care Appeals Office.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.  Pursuant to CCR 3084.6(c)(4), tour administrative remedies have not been exhausted.  The Request for Health Care Services (CDC Form 7362) is provided with the cancellation memorandum.

This screening action may not be appealed unless you allege that the above reason(s) is inaccurate.  In such case, return this form and your appeal to the Health Care Appeals Office with the necessary information.

*Id.* (footnote added).

_____

[8] This Court notes that the actual date of the change in chrono at issue was November 7, 2012.  *See* Dkt. 49-6 at 18.  However, October 17, 2011 was the date Plaintiff originally was classified as DPM status.  It seems that Appeals Coordinator Harless not only referred to the wrong change of chrono date, but he also made a typographical error—October 17, *2013* instead of October 17, *2011*.  As explained below, Plaintiff appealed the cancellation decision, and prison officials noted Appeals Coordinator Harless's typographical error.  In any event, as explained below, RJD HC 13048179 still would have been untimely, as it was submitted in April 2013, which is more than 30 days after the November 7, 2012 change in chrono.

At the bottom of the letter, there are further instructions, stating:

> Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary to resubmit the appeal within the timeframes, 30 calendar days as specified in CCR 3084.6(a) and CCR 3084.6(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

*Id.*

### b. Health-Care Appeal Log No. RJD HC 13048229 ("RJD HC 13048229")

On April 16, 2013, Plaintiff submitted RJD HC 13048229, in which he requested "to have appeal decision re-evaluated and processed accordingly." *Id.* ¶ 13, Ex. F. The appeal was bypassed at the first level of appeal on April 24, 2013. *Id.*

On April 24, 2013, RJD HC 13048229 was "rejected" at the second level of review. *Id.* On the same date, Appeals Coordinator Harless sent Plaintiff a letter, stating:

> Your appeal is being rejected and returned to you for the following reason(s):
>
> Your request to have the appeal decision re-evaluated/processed accordingly does not apply to the correspondence request (log number SQP-C-12-11182) referenced in Section A of your health care appeal.
>
> Please clarify what you are appealing and resubmit your appeal for processing. . . . .

*Id.*

On May 12, 2013, Plaintiff re-submitted RJD HC 13048229, in which he specifically repeated his allegations from his previously cancelled health care appeal, RJD HC 13048179, and requested re-evaluation of it. *Id.*

On May 16, 2013, Appeals Coordinator Harless sent Plaintiff another letter, stating that "[his] appeal had been assigned to the Health Care Appeals Office for response." *Id.*

On May 30, 2013, SQSP Health Care Services Chief Executive Officer ("CEO") Andrew W. Deems denied RJD HC 13048229 at the second level of review, stating that Plaintiff was

"interviewed via telephone by N. Podolsky Registered Nurse (RN) on May 31, 2013,[9] regarding this appeal." *Id.* The second level response further states as follows:

> During the interview you were informed that your request to have Health Care Appeal Log # RJD HC 13048179 decision re-evaluated and processed accordingly is denied. The review of your electronic Unit Health Record (e-UHR) indicates that on December 6, 2013, you were seen by your primary care provider (PCP) Dr. Pachynski and your issue was appropriately addressed. It was noted that during your previous visit on November 15, 2012, you were reminded that you[] had been issued a CDC 1845 Disability Impacting Placement Mobility (DPM) status and are awaiting transfer. On November 15, 2012, you discussed your DPM status with your PCP and stated that you have weaknesses and although you can do a few stairs, you are not able to so stairs up and down, back to back. In addition, your unit staff member stated that you had frequent falls and often required assistance. You were explained [sic] by your PCP that your DPM status was established based on your medical needs and will not change.

*Id.* Plaintiff claims that he did not receive this May 30, 2013 response until June 24, 2013, and that it was the first time he received a decision relating to the issues in his CDCR Form 7362. Dkt. 1 at 23.

Dissatisfied with the second level response, Plaintiff submitted his appeal to the Director's level for review on July 7, 2013. Robinson Decl., Ex. F. CCHCS Chief L. D. Zamora denied his appeal at the Director's level on November 5, 2013, stating as follows:

> Your appeal file and documents obtained from your Unit Health Record were reviewed by staff. These records indicate:
>
> You have not presented any information or supporting documentation that substantiates, or provides a valid reason you did not submit the appeal to the Health Care Appeals Office until April 4, 2013, which was beyond the allowable time as set forth in CCR, Title 15, Section 3084.8 for its submission following the date of the event or action you are appealing regarding the change in your chrono which took place on October 17, 2011.[10] Consequently, on

---

[9] The Court notes that the record indicates that CEO Deems denied RJD HC 13048229 on May 30, 2013, but within that denial CEO Deems indicated that Plaintiff was interviewed by the nurse on May **31**, 2013, the day **after** the denial. Robinson Decl., Ex. F. The Court finds no need to rectify such an inconsistency as it is not pertinent to the analysis.

[10] Again, the Court notes that the appeals reviewer incorrectly referred to the October 17, 2011 change of chrono instead of the November 7, 2012 change in chrono at issue. *See* Dkt. 49-6 at 18. However, as explained below, RJD HC 13048179 would have still been untimely as it was submitted in April 2013, which is more than 30 days after the November 7, 2012 change in chrono.

April 10, 2013, your appeal Log # RJD HC 13048179 was appropriately cancelled per CCR, Title 15, Section 3084.6(c)(4).

It is noted that the cancellation notification dated April 10, 2013, contained an error in that it had indicated that action or event that is the subject of the appeal had happened on October 17, 2013, when in fact the date of the chrono change was October 17, 2011.

*Id.* (footnote added). Chief Zamora further noted that, after review, "[n]o intervention at the Director's Level of Review [was] necessary as [Plaintiff's] appeal was appropriately cancelled." *Id.* (footnote added). Thus, Chief Zamora ordered that "[n]o change or modification [was] required by the Office of the Third Level Appeals-Health Care." *Id.*

### c. Health-Care Appeal Log No. RJD HC 13048787 ("RJD HC 13048787")

On July 23, 2013, Plaintiff submitted RJD HC 13048787, in which he requested an open magnetic resonance imaging ("MRI") scan of the lumbar spine. *Id.*, Ex. E. The appeal was bypassed at the first level of appeal on July 29, 2013. *Id.*

On November 15, 2013, RJDCF Acting Chief Medical Executive J. Nikolic, M.D. and RJDCF Chief Executive Officer M. Glynn denied Plaintiff's appeal at the second level of review, noting that "an MRI [was] not considered at this time and X-Rays were recently completed." *Id.*

Dissatisfied with the second level response, Plaintiff submitted his appeal to the Director's level for review on December 24, 2013. *Id.* CCHCS Chief L. D. Zamora denied his appeal at the Director's level on October 15, 2014, stating: "no intervention at the Director's Level of Review [was] necessary as [Plaintiff's] medical condition has been evaluated and [Plaintiff was] receiving treatment deemed medically necessary." *Id.* Licensed clinical staff conducted a detailed review of Plaintiff's Unit Health Record ("UHR"), noting: his "ongoing Primary Care Provider (PCP) follow up evaluation and treatment" (up to February 12, 2014) for "[his] history of multi-level degenerative disc disease and chronic radiating low back pain symptoms, including review of historical MRI and recent x-ray studies, approved accommodations, lumbar spine pain injection, physical therapy services, and active pain medication orders." *Id.* The assessments further noted that: Plaintiff was "recorded as ambulatory using a cane and independent with activities of daily living, without significant functional limitation." *Id.* The PCP documented "discussion of medical versus surgical treatment of chronic low back pain including risks associated with [his]

16

1  multiple comorbid conditions (insulin dependent diabetes, chronic kidney disease, and

2  hypertension), with a plan to continue conservative (non-surgical) medical management"; and the

3  PCP "did not document current medical indication for repeat lumbar spine MRI."  *Id.*

### d.  Health-Care Appeal Log No. RJD HC 14051288 ("RJD HC 14051288")

5  On June 6, 2014, Plaintiff submitted RJD HC 14051288, in which he requested: a referral

6  to a neurologist; effective pain management for his "severe back disorder"; and compensation for

7  his lower-back condition while housed at RJDCF.  *Id.*, Ex. D.  The appeal was bypassed at the first

8  level of appeal on June 9, 2014.  *Id.*

9  On July 24, 2014, RJDCF Chief Medical Executive S. Roberts, M.D. and RJDCF Chief

10  Executive Officer M. Glynn partially granted Plaintiff's appeal at the second level of review,

11  noting that "[his] [r]equest to be referred to Neurology is partially granted" because he was "seen

12  on 7/23/14 for a Telemedicine Neurosurgery consult and surgery was recommended," but that

13  "[Plaintiff] preferred to wait for now."[11]  *Id.* (footnote added).  The reviewers denied Plaintiff's

14  request for monetary compensation as "beyond the scope of the appeals process."  *Id.*

15  Dissatisfied with the second level response, Plaintiff submitted his appeal to the Director's

16  level for review on August 25, 2014.  *Id.*  CCHCS Deputy Director Lewis denied his appeal at the

17  Director's level on October 15, 2014 stating: "no intervention at the Director's Level of Review

18  [was] necessary as [Plaintiff's] medical condition has been evaluated and [Plaintiff was] receiving

19  treatment deemed medically necessary."  *Id.*  Licensed clinical staff conducted a detailed review of

20  Plaintiff's Unit Health Record ("UHR"), noting his "ongoing Primary Care Provider (PCP) follow

21  up evaluation and treatment" (up to August 22, 2014) for his "history of chronic low back pain,

22  with radiculopathy."[12]  *Id.* (footnote added).  The assessments further noted: that the PCP

23  "developed a plan of care to treat [Plaintiff's] low back pain including neurosurgery consultation

24  on July 23, 2014, a computed tomography (CT) scan of the lumbar spine on September 4, 2014 (as

---

[11] The record shows that Plaintiff underwent surgery for his lower back pain on November 5, 2015.  Robinson Decl., Ex. B.

[12] Radiculopathy refers to a set of conditions in which one or more nerves are affected and do not work properly.  *See* https://en.wikipedia.org/wiki/Radiculopathy (last accessed Aug. 3, 2017).

17

recommended by the neurosurgeon)"; that Plaintiff had a "neurosurgeon follow up on September 24, 2014"; that his PCP ordered an "adjustment of [Plaintiff's] pain medication regimen, which includes active orders for the medications amitriptyline and carbamazepine"; that his "medical conditions and medication needs [were being] closely monitored"; and that he had a pending PCP follow up appointment. *Id.*

### e. Appeal/Staff Complaint Log No. RJD SC 15001414 ("RJD SC 15001414")

On June 23, 2015, Plaintiff submitted RJD SC 15001414, in which he complained that Dr. Santos requested that he withdraw an appeal concerning clonidine patches while he was housed at RJDCF by stating: "I will give you your Clonidine Patches quickly if you withdraw the 602 [inmate appeal] and there will be a delay if you don't." *Id.*, ¶ 10 Ex. C. The appeal was bypassed at the first level of appeal on June 30, 2015. *Id.*

On July 23, 2015, Chief Physician and Surgeon Walker and CEO Glynn categorized Plaintiff's health-care appeal as a staff complaint appeal and partially granted it at the second level of review, noting that "[a]n inquiry was conducted into [Plaintiff's] allegations." *Id.* The reviewers further noted that the "[a]ppeal inquiry [was] complete/has been reviewed and all issues were adequately addressed," that no witnesses were questioned, and that it was determined that staff "***did not*** violate CDCR policy with respect to one or more to the issues appealed." *Id.* (emphasis in original).

Dissatisfied with the second level response, Plaintiff submitted his appeal to the Director's level for review on August 27, 2015. *Id.* Deputy Director Lewis denied his Staff Complaint appeal at the Director's level on November 12, 2015, stating: "there was no compelling evidence that warranted intervention at the Director's Level of Review as your staff complaint was processed in accordance with CDCR Policy and the California Code of Regulations, Title 15." *Id.*

### f. Health-Care Appeal Log No. RJD HC 15053622 ("RJD HC 15053622")

On July 15, 2015, Plaintiff submitted RJD HC 15053622, in which he requested that medical staff reorder his prescription for methadone. *Id.*, Ex. B. Following an interview by Dr. Santos, and a first level of review by Chief Physician and Surgeon Walker, RJD HC 15053622

was denied at the first level of appeal on August 18, 2015. *Id.* The denial documented that during Plaintiff's interview and examination by Dr. Santos, his "medical profile was reviewed and it was determined that with [his] overall health issues, increasing [his] Methadone would be medically contraindicated." *Id.* Therefore, Plaintiff was directed to "remain on [his] current medication regimen for pain." *Id.*

Similarly, on October 21, 2015, Chief Medical Executive Roberts and CEO Glynn denied Plaintiff's appeal at the second level of review, noting that the denial was based on the decision at the first level of appeal. *Id.* The denial further stated:

> During your interview and examination with Dr. Santos on 07/21/15, your request for Methadone to be reinstated was denied. It was recommended that an increase to Amitriptyline be prescribed. You agreed with this treatment plan. On 8/13/2015 you were seen by Dr. Hodges. Recommendations from the neurosurgeon for an anterior diskectomy [sic] and fusion of the L5 to S1 were reviewed. Dr. Hodges completed a Referral for Services (RFS) for this procedure. He also reduced the prescription for Amitriptyline per your request. There is no medical documentation in file, since your interview on 07/21/15, which suggests a reinstatement of Methadone.

*Id.* The denial additionally noted that Plaintiff had attempted to add a "new issue and/or request" to his health-care appeal, but that it was "not appropriate to expand the appeal beyond the initial problem and/or request." *Id.* Thus, the second level reviewers stated, "This issue will not be addressed, as you have not provided evidence that you attempted to address it at the lower level, per the CCR, Title 15, Section 3084.1(b)." *Id.*

Dissatisfied with the second level response, Plaintiff submitted his appeal to the Director's level for review on November 22, 2015. *Id.* Licensed clinical staff conducted a detailed review of Plaintiff's UHR, noting: his "ongoing Primary Care Provider (PCP) follow up evaluation and treatment" (up to November 12, 2015) for his "history of chronic low back pain, with recent surgery on November 5, 2015." *Id.* The assessments further noted that "the PCP advised [Plaintiff] that methadone is contraindicated due to risks associated with [his] cardiac condition," that he was "prescribed alternative, non-narcotic pain medication," that his medical conditions and medication needs were being monitored closely, and that he had a pending PCP follow up appointment. *Id.* On December 31, 2015, Plaintiff's appeal was denied at the Director's level of

19

review, with a note that "no intervention at the Director's Level of Review [was] necessary as [Plaintiff's] medical condition has been evaluated and [Plaintiff was] receiving treatment deemed medically necessary." *Id.*

### 4. Plaintiff's Non-Medical/Administrative Appeals

Defendants have submitted evidence that there are four non-medical appeals that Plaintiff submitted to the Office of Appeals ("OOA")[13] after November 2012, both of which were accepted by, and received a decision from, the OOA. Voong Decl. ¶ 6, Ex. A. These administrative appeals include log nos. CIM-13-00644/RJD-13-00494, OOA-12-14163, RJD-14-01976, and RJD-15-00775. *Id.*

The Court shall elaborate on these four non-medical appeals below, and it will become evident that they do not grieve any claim that arose at SQSP.

#### a. Non-Medical Appeal Log No. CIM-13-00644/RJD-13-00494 ("CIM-13-00644/RJD-13-00494")

On January 17, 2013, Plaintiff submitted CIM-13-00644/RJD-13-00494 while he was incarcerated at CIM. *Id.*, Ex. B. Therein, he alleged that he arrived at CIM on December 27, 2012 following a 12-hour bus ride, during which he experienced "back pain," and that CIM staff subjected him to deliberate indifference during his layover at CIM. *Id.* On October 1, 2013, the appeal was denied at the third level of review. *Id.*

#### b. Administrative Appeal Log No. OOA-12-14163 ("OOA-12-14163")

On August 21, 2013, Plaintiff submitted OOA-12-14163, in which he complained that the OOA erroneously cancelled RJD-13-01230 (relating to improper ASU assignment RJDCF). *Id.*, Ex. C. On October 18, 2013, the appeal was denied at the third level of review. *Id.*

#### c. Non-Medical Appeal Log No. RJD-14-01976 ("RJD-14-01976")

On October 25, 2013, Plaintiff submitted RJD-14-01976, in which he complained that RJDCF staff inappropriately cancelled another inmate appeal, log no. RJD-A-14-01816 (relating to his challenge to a charge to his trust account while housed at RJDCF). *Id.*, Ex. D. Plaintiff's

---

[13] The OOA formerly was named the Inmate Appeals Branch. Voong Decl. ¶ 1. First- and second-level appeals are handled by staff located at the respective institutions, while third-level, non-medical appeals are received and decided by CDCR staff at the OOA. *Id.* at 3.

appeal was denied at the third level of review on April 15, 2014. *Id.*

### d. Non-Medical Appeal Log No. RJD-15-00775 ("RJD-15-00775")

On February 6, 2015, Plaintiff submitted RJD-15-00775, in which he complained that RJDCF staff improperly denied him a rain suit. *Id.*, Ex. E. Plaintiff's appeal was denied at the third level of review on September 24, 2015. *Id.*

## C. Discussion

### 1. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

A district court may consider only admissible evidence in ruling on a motion for summary

judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendants have presented declarations from the following: their attorney, Deputy Attorney General Trace O. Maiorino; ICAB Chief R. Robinson; OOA Chief Voong; and Katrina Decaro, Custodian of Records at the Government Claims Program at the Victim Compensation and Government Claims Board. Dkts. 48-50, 48-1.

Plaintiff's opposition (which he claims is incomplete) has not been signed under penalty of perjury. Dkt. 74. However, he filed a verified complaint. Dkt. 1. The Court will construe his complaint as an affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### 2. Analysis

Defendants claim that the prison has no record showing Plaintiff's Eighth Amendment, First Amendment, or due process claims have been exhausted at the final level of review. Dkt. 47 at 14-25. Defendants specifically argue that Plaintiff has failed to exhaust his administrative remedies as to the following federal claims: (1) his Eighth Amendment claims against Defendants Alvarez, Pachynski, Martin, Wiggins, Gray, and Powell; (2) his First Amendment claims against Defendants Alvarez, Martin, Wiggins, and Gray; and (3) his due process claim against Defendants Davis and Hay. *Id.* at 14-25. Defendants argue that these claims remain unexhausted because Plaintiff never submitted them to, nor received a substantive decision by, the third level of review as required by prison regulations. *Id.* at 15. Therefore, Defendants argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies. *Id.* at 14.

### 1) Eight Amendment Claims

#### a) Defendant's Initial Burden of Proving Unexhaustion

The Court notes that Plaintiff's Eighth Amendment claims against Defendants Alvarez, Pachynski, Martin, Wiggins, Gray, and Powell are based on a number of allegations, including that: (1) on November 7, 2012 his mobility restrictions were increased improperly to DPP/DPM status (without any UCC hearing), and that this increase caused a change in his housing

assignment on November 8, 2012 (dkt. 1 at 48, 49); (2) Defendants Alvarez and Pachynski refused to refer him to a pain-management consultant and rejected his complaints of back pain (*id.* at 49-50, 53-54); and (3) his change in disability status caused him to be subjected to "extended travel" by bus on December 26, 2012, during which he was further injured (*id.* at 57).

The record shows that Plaintiff submitted five health-care appeals to the ICAB that were accepted for review and that received a decision from the third and final level of review after November 2012. Robinson Decl. ¶ 8. These health-care appeals include RJD HC 15053622, RJD SC 15001414, RJD HC 14051288, RJD HC 13048787, and RJD HC 13048229. *Id.* Aside from these five health-care appeals, Plaintiff did not exhaust any other appeals at the final level of review after November 2012. *Id.* ¶ 14. As explained in detail above, a review of each of these appeals demonstrates that none of them addressed Plaintiff's aforementioned Eight Amendment claims against Defendants. First, Plaintiff requested a lower-back MRI in RJD HC 13048787 on or about July 29, 2013, while housed at RJDCF. *Id.*, Ex. E. Second, in RJD HC 14051288, dated June 6, 2014, Plaintiff requested a referral to a neurologist, effective pain management, and compensation for his lower-back condition while housed at RJDCF. *Id.*, Ex. D. Third, in RJD SC 15001414, dated June 23, 2015, Plaintiff complained that Dr. Santos requested Plaintiff to withdraw an appeal concerning clonidine patches while he was housed at RJDCF. *Id.*, Ex. C. Fourth, Plaintiff's appeal RJD HC 15053622, dated July 15, 2015, complained that his methadone prescription had been discontinued improperly. *Id.*, Ex. B. And fifth, in HC 13048229, Plaintiff addressed the cancellation of another health-care appeal—RJD HC 13048179 (which will be addressed in detail below). Defendants argue that Plaintiff did not raise his Eighth Amendment claims at the third level of review, he did not exhaust administrative remedies properly before filing his lawsuit, and summary judgment should be granted. Dkt. 47 at 16 (citing *Woodford*, 548 U.S. at 94).

However, Defendants acknowledge that Plaintiff filed a *relevant* grievance, RJD HC 13048179 (relating to some of his Eighth Amendment claims) but contend that the grievance was deemed untimely. Dkt. 47 at 16-17. The undisputed evidence shows that RJD HC 13048179 was cancelled as being untimely. Robinson Decl., Ex. F.

Irrespective of the merits of Plaintiff's claim, on April 10, 2013, RJD HC 13048179 was cancelled, and its cancellation as untimely is supported by California prison regulations. Plaintiff raised multiple issues in his appeal RJD HC 13048179, dated April 4, 2013, including, among other things, that Defendant Alvarez made an improper change in chrono on November 7, 2012, which caused Plaintiff "abruptly" to be rehoused on November 8, 2012 and taken to a UCC hearing on November 19, 2012. RJD HC 13048179 alleged that the underlying change of chrono occurred in November 7, 2012, but Plaintiff claims that he was first shown the change of chrono during the hearing on November 19, 2012,[14] and thus Plaintiff was required to submit his grievance within "30 calendar days" of that date. *See* Cal. Code Regs. tit. 15, § 3084.8(b)(1). However, RJD HC 13048179 was not filed by Plaintiff until April 4, 2013—136 calendar days (or 4 1/2 months) after November 19, 2012. Additionally, in RJD HC 13048179, Plaintiff referenced a twelve-hour bus ride on December 26, 2012 and a layover at CIM during his transfer to the RJDCF. To be timely, Plaintiff should have submitted an appeal concerning this event no later than thirty days later, or by January 25, 2013. *See* Cal. Code Regs. tit. 15, § 3084.8(b). But again, Plaintiff was untimely and waited 99 days (or a little over 3 months) before submitting RJD HC 13048179 on April 4, 2013. Plaintiff has offered no evidence to dispute the untimeliness of RJD HC 13048179. *See* Dkts. 1, 74. Therefore, it is undisputed that Plaintiff failed to submit his appeal timely within thirty days from the date of these aforementioned events, because he did not submit RJD HC 13048179 until April 4, 2013. Thus, RJD HC 13048179 was cancelled as untimely. Robinson Decl., Ex. F. Specifically, the record shows that the April 10, 2013 letter indicated that RJD HC 13048179 was cancelled pursuant to section 3084.6(c)(4), which provides that an inmate appeal may be cancelled for the following reason:

> Time limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints. In determining whether the time limit has been exceeded, the appeals coordinator shall consider whether

United States District Court
Northern District of California

---

[14] For the purposes of calculating the timeliness of RJD HC 13048179, the Court could have used November 7, 2012 (change in chrono date) or November 8, 2012 (date he was rehoused) as the starting date of the 30-day time frame, but instead it will use November 19, 2012—the latest date that Plaintiff claims he was made aware of the November 7, 2012 change in chrono.

the issue being appealed occurred on a specific date or is ongoing. Cal. Code Regs. tit. 15, § 3084.6(c)(4). Once cancelled, an appeal shall not be accepted except pursuant to section 3084.6(a)(3), which provides that "[a]t the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that the cancellation was made in error or new information is received which makes the appeal eligible for further review." *Id.* § 3084.6(a)(3). Here, no such determination of error was made and the cancelled RJD HC 13048179 was not eligible for further review. Plaintiff was advised that he could file a separate appeal on the cancellation decision, and he did so by filing RJD HC 13048229. However, on November 5, 2013, Chief Zamora denied RJD HC 13048229 at the Director's level, upon finding that the canceled appeal—RJD HC 13048179—was appropriately cancelled. Robinson Decl., Ex. F. Because the "cancellation" of an appeal "does not exhaust administrative remedies," *see* Cal. Code Regs. tit. 15, § 3084.1(b), the undisputed evidence demonstrates that Defendants have met their initial burden of proving there were available administrative remedies for Plaintiff, that Plaintiff knew about the prison's health-care appeal procedure, and that Plaintiff failed to exhaust those remedies properly, *see Albino*, 747 F.3d at 1172.

### b) Plaintiff's Burden of Proving Unavailability of Administrative Remedies

Having adequately shown that there were available administrative remedies that Plaintiff did not fully exhaust, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166. Improper screening of a prisoner's administrative grievances may excuse a failure to exhaust. *See Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). The prisoner must demonstrate "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

Here, Plaintiff has met the first *Sapp* factor, as shown by his attempt to file RJD HC

13048179, which arguably could have sufficed to exhaust some of his Eighth Amendment claims. *See id.* However, as explained above, RJD HC 13048179 was cancelled as untimely under prison regulations. *See* Cal. Code Regs. tit. 15, §§ 3084.6(c)(4), 3084.8(b)(1). Therefore, in order to satisfy the second *Sapp* factor, Plaintiff must show that prison officials rejected and cancelled RJD HC 13048179 for reasons inconsistent with applicable regulations. *See Sapp*, 623 F.3d at 823-24.

Plaintiff contends that the cancellation decision dated April 10, 2013 is "factually incorrect" in that prison officials focused on the incorrect date—the October 17, 2011 change of chrono—instead of correct date at issue—the November 7, 2012 change of chrono or the November 19, 2012 UCC hearing. Dkt. 1 at 21. However, as the Court noted above, even though the wrong date was used, the calculation using the correct date—November 19, 2012—still would have resulted in an appeal that was untimely by four-and-a-half months. *See supra* DISCUSSION II.C.2.(1)(a). Thus, Plaintiff would not be able to argue that prison officials screened his appeal for "reasons inconsistent with or unsupported by applicable regulation." Contrary to such allegations, the Court has explained above that RJD HC 13048179 was cancelled because it was untimely pursuant to a prison regulation—specifically, section 3084.6(c)(4), which provides that an inmate appeal may be cancelled if the time limits for submitting an appeal are exceeded. *See* Cal. Code Regs. tit. 15, § 3084.6(c)(4). The record shows that Plaintiff challenged the cancellation decision and submitted RJD HC 13048229, in which he requested "to have appeal decision [in RJD HC 13048179] re-evaluated and processed accordingly." Robinson Decl., Ex. F. Plaintiff appealed RJD HC 13048229 to the third and final level of review, and Chief Zamora concluded that RJD HC 13048179 was "appropriately cancelled." *Id.* (footnote added). Therefore, Plaintiff has not satisfied the second *Sapp* factor, because he has not shown that prison officials cancelled RJD HC 13048179 for any reason inconsistent with applicable regulations. *See Sapp*, 623 F.3d at 823-24. Thus, Plaintiff would not be excused from the exhaustion requirement under *Sapp*. By failing to file a timely grievance relating to his Eighth Amendment claims, and instead filing the instant action in federal court, Plaintiff deprived SQSP prison officials of the "time and opportunity to address complaints internally before allowing the initiation of a federal case," which is the purpose of the PLRA exhaustion requirement. *Porter*, 534 U.S. at 525.

1  Plaintiff's inability to exhaust his Eighth Amendment claims is attributable, in part, to his delay in

2  filing RJD HC 13048179.  Accordingly, Plaintiff has not met his burden to show that there was

3  something in his particular case that made generally available administrative remedies effectively

4  unavailable to him.  *See Albino*, 747 F.3d at 1172.

5       In his opposition, Plaintiff concedes that he was aware of the administrative appeal

6  process, as well as the thirty-day time frame during which to file an appeal, but he claims that the

7  filing of a CDCR Form 22 is another way to exhaust his administrative remedies.  Dkt. No. 74 at

8  1-2.  He claims that the "two methods of litigating inmate appeals" create a "parallel procedure,"

9  stating: "One, falls under CCR tit. 15, § 3084, et seq., and another one that falls under CCR tit 15,

10  § 308[6][15] et al."  *Id.* at 1.  He further states as follows:

11          The latter one, is called a Written Request for Interview, i.e. Form-

12          22.  The written request[] for interview operates under this
regulation, [inmates are] directed to now use a FORM-22 . . . which

13          allows a three day turnaround, and if nothing is resolved, then you
send the Form 22 to the Supervis[o]r who has seven (7) days to

14          resolve the issue and if not, then you file a CDC-602, all of which
has to be completed within the thirty (30) period, which is the latest

15          day that you can file the regular inmate appe[al].

16  *Id.* at 1-2.  As mentioned above, the record shows that on December 10, 2012, Plaintiff filed both a

17  CDCR Form 22 as well as a CDCR Form 7362 "requesting that [his] PCP re-evaluate [his]

18  disability status, . . . [but] prison officials never responded."  Dkt. 1 at 24.

19       The Court finds Plaintiff's argument unavailing.  The CDCR Form 22 is ***not*** part of the

20  administrative appeal process.  According to Title 15 of the California Code of Regulations

21  § 3086(a), the CDCR Form 22 is a form inmates may use to request interviews with staff and/or

22  request items or services through a written procedure.  Cal. Code Regs. tit. 15, § 3086(a).  The

23  regulations also explicitly state that the use of a CDCR Form 22 does ***not*** constitute exhaustion of

24  administrative remedies.  *See* Cal. Code Regs. tit. 15, § 3086(i).  Similarly, CDCR Form 7362 is

25  not part of the administrative appeal process.  Rather, CDCR Form 7362 is a Health Care Request

27      [15] Because Plaintiff is referring to CDCR Form 22, it seems that Plaintiff inadvertently
typed "CCR tit 15, § 308**5**," relating to the "Americans With Disabilities Act," instead of section

28  308**6**, which relates to the "Inmate/Parolee Request for Interview, Item or Service" using CDCR
Form 22.  *Compare* Cal. Code Regs. tit. 15, § 3085 *with id.*, § 3086.

Form.  *See, e.g.*, *Sapp v. Kimbrell*, 623 F.3d 813, 819 (9th Cir. 2010).  As explained above, an inmate must begin the administrative appeal process by filing a health-care appeal using CDCR Form 602 and describing the specific issue under appeal, as well as the relief requested.  *See* Cal. Code Regs. tit. 15, § 3084.2(a).  Here, as mentioned above, the record shows that Petitioner attempted to file a relevant health-care appeal— RJD HC 13048179 but, as mentioned above, the "cancellation" of RJD HC 13048179 "does not exhaust administrative remedies."  *See* Cal. Code Regs. tit. 15, § 3084.1(b).

Moreover, even if the Court could find that the CDCR Form 22 or 7362 requests that Plaintiff submitted were his attempts at exhausting his administrative remedies, Plaintiff only focused on ***one*** out of his three Eighth Amendment claims: his claim relating to his mobility restrictions being increased improperly to DPP/DPM status.  *See* Dkt. 1 at 15; Dkt. 1-3 at 12 (CDCR Form 22); Dkt. 1 at 22; Dkt. 1-3 at 13 (CDCR Form 7362).  Nowhere in these requests does Plaintiff raise his other claims, i.e., involving the injuries sustained during bus transport or the refusal to refer him to a pain-management consultant.  Thus, Plaintiff has not provided any evidence that the subject matter of these CDCR Form 22 or 7362 requests were the same as these other Eighth Amendment claims asserted in this underlying federal civil rights case.  Administrative remedies may not be exhausted where the grievance, liberally construed, does not have the same subject and same request for relief.  *See, e.g.*, *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (grievance that complained of visitation restrictions, and did not mention an assault or theorize that the visitation restriction imposed was related to the assault, was insufficient to put prison officials on notice that staff conduct contributed to the assault); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 (9th Cir. 2007) (even with liberal construction, grievance requesting a lower bunk due to poor balance resulting from a previous brain injury was not equivalent to, and therefore did not exhaust administrative remedies for, claims of denial of mental health treatment in violation of the ADA and Rehabilitation Act).

The Court concludes that Plaintiff has failed to provide evidence that he exhausted his administrative remedies regarding his underlying Eighth Amendment claims that Defendants were deliberately indifferent to his serious medical needs.  The record shows that Petitioner attempted

to file a relevant health-care appeal—RJD HC 13048179 but, as mentioned about, the "cancellation" of RJD HC 13048179 "does not exhaust administrative remedies." *See* Cal. Code Regs. tit. 15, § 3084.1(b). The Court has found above that Plaintiff has not satisfied the second *Sapp* factor, because he has not shown that prison officials cancelled RJD HC 13048179 for any reason inconsistent with applicable regulations. *See Sapp*, 623 F.3d at 823-24. Plaintiff's CDCR Form 22 and 7362 requests cannot exhaust his Eighth Amendment claims because they are not part of the administrative appeals process, and they did not include all his Eighth Amendment claims. Accordingly, Plaintiff has not met his burden of showing that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

In sum, Defendants have met their ultimate burden of presenting evidence of unexhaustion, which Plaintiff has not disputed persuasively. Plaintiff's filing of an untimely appeal—RJD HC 13048179—that was eventually cancelled does not constitute proper exhaustion. *Woodford*, 548 U.S. at 84. The prison's requirements define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218. A grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue. *Woodford*, 548 U.S. at 90. The undisputed facts show that Plaintiff failed to comply with these requirements, and he has not presented evidence that precludes summary judgment.

Accordingly, Defendants' motion for summary judgment is GRANTED on the ground that Plaintiff failed to exhaust his administrative remedies as to his Eighth Amendment claims.

### 2) First Amendment and Due Process Claims

#### a) Defendant's Initial Burden of Proving Unexhaustion

In support of Defendants' argument that Plaintiff's First Amendment and due process claims are unexhausted, Defendants submit evidence that the non-medical appeals submitted by Plaintiff do not grieve any claim that arose at SQSP. Specifically, Plaintiff submitted four non-medical administrative appeals to the OOA after November 2012, that were accepted by, and received a decision from the OOA, including appeals CIM-13-00644/RJD-13-00494, OOA-12-14163, RJD-14-01976, and RJD-15-00775. Voong Decl. ¶ 6, Ex. A. As outlined above, a brief

review of these appeals demonstrates that these appeals do not grieve any First Amendment and due process claims. *See id.* In CIM-13-00644/RJD-13-00494, Plaintiff complained that on December 27, 2012 in CIM he was denied access to a bunk, placed in a disciplinary security cage, and denied a CPAP machine. *Id.* ¶ 7 Ex. B. In OOA-12-14163, dated August 21, 2013, Plaintiff complained that the OOA erroneously cancelled RJD-13-01230, an appeal in which he complained that he had received an improper housing assignment at RJDCF. *Id.* ¶¶ 8, 11 Exs. C, F. In RJD-14-01976, dated May 27, 2014, Plaintiff complained that staff inappropriately cancelled inmate appeal RJD-A-14-01816, an appeal in which he contested a charge to his trust account while housed at RJDCF. *Id.* ¶ 9 Ex. D, ECF No. 50. Finally, in RJD-15-00775, dated February 6, 2015, Plaintiff complained that the prison officials at RJDCF improperly denied him a rain suit. *Id.* ¶ 10 Ex. E.

Defendants adequately have shown that there were available administrative remedies that Plaintiff did not fully exhaust. As such, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166.

### b) Plaintiff's Burden of Proving Unavailability of Administrative Remedies as to His Due Process Claim

Plaintiff alleged that Defendants Hay and Davis violated his right to due process by preventing him from using the prison's grievance process to its full extent. As noted above, prison regulations provide that "any policy, decision, action, condition, or omission by the [CDCR] or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Because Plaintiff contends that Defendants Hay's and Davis's alleged actions had an adverse effect upon him, he was required to exhaust that claim before filing suit. This exhaustion requirement is mandatory and applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. However, the undisputed evidence shows that Plaintiff did not satisfy the exhaustion requirement, because he did not receive a third-level decision on his due process claim against Defendants

Davis and Hay. *See Woodford*, 548 U.S. at 85-86, 94 (a substantive decision on an appeal at the third level satisfies the exhaustion requirement under the PLRA). Plaintiff offered no evidence to dispute these facts. Dkts. 1, 74. Therefore, Defendants have met their ultimate burden of presenting evidence of unexhaustion of this due process claim, which Plaintiff has not disputed persuasively. Accordingly, because Plaintiff failed to exhaust administrative remedies as to his due process claim, summary judgment is GRANTED in favor of Defendants Davis and Hay.[16]

### c) Plaintiff's Burden of Proving Unavailability of Administrative Remedies as to His First Amendment Claim

Plaintiff contends that Defendants Alvarez and Martin retaliated against him in violation of the First Amendment because they allegedly: (1) refused to notify the assigned H-Unit Correctional Counselor I of mobility change to classify Plaintiff under DPP/DPM status, preventing Plaintiff from being seen before a UCC; (2) failed to notify Plaintiff that his mobility status changed to DPP/DPM; (3) failed to advise his primary care provider and provide him with a medical history and physical; (4) improperly removed Plaintiff from SQSP's H-Unit "to isolate him from access to the H-Unit personnel"; and (5) engaged in an "egregious abuse of power" to punish Plaintiff for filing a lawsuit against another officer in *Packnett v. Wingo*, CIV-09-0327-YGR (PR). Dkt. 1 at 50-51. Additionally, Plaintiff alleged that Defendants Alvarez, Wiggins, and Gray "set up a retaliatory sub-facility transfer, [and] used [it] to set up a prison to prison transfer to [RJDCF's] Ad Seg housing unit" to punish him for filing his previous lawsuit against Sergeant Wingo. *Id.* at 56.

In his complaint, Plaintiff cites two appeals, RJD-B-13-0574/CSQ-B-13-0402 and CSQ-C-13-00746/RJD-A-13-2164, in support of his allegation that he was prevented from exhausting properly his retaliation claims. Dkt. 1 at 35-38. The Court now briefly summarizes these appeals, which were not included earlier because Plaintiff did not pursue them to the highest level of appeal.

---

[16] The Court's finding that Defendants are entitled to summary judgment as to Plaintiff's due process claim obviates the need to address Defendants' alternative argument that Plaintiff's conclusory claim against Defendants Davis and Hay should be dismissed for failure to state a due process claim.

**(i)** **Appeal Log No. RJD-B-13-0574/CSQ-B-13-0402**

After Plaintiff was transported to RJDCF, Plaintiff submitted inmate appeal log no. RJD-B-13-0574 ("RJD-B-13-0574"), dated January 24, 2013, which stated his issue as follows, "on 12-26-12, [he was] transported from [SQSP], denied class postponement for medical reevaluation. [On the Second] day [for] 12 hrs, [he was] held [in] security cage, at layover, housed indefinitely [in] Ad Seg, [upon] arrival at [RJDCF]." Dkt. 1, Ex. E, Dkt. 1-9 at 2. In response, at the first level of review on February 1, 2013, the RJDCF appeals coordinator advised Plaintiff that RJD-B-13-0574 had been forwarded to SQSP for processing. Dkt. 1-9 at 4. RJD-B-13-0574 was then processed at SQSP and assigned another log number, log. no. CSQ-B-13-0402 ("CSQ-B-13-0402"). *Id.* at 5. However, CSQ-B-13-0402 was rejected at the first level of review on February 19, 2013, and Plaintiff did not pursue it any further.[17] *Id.* Also on February 19, 2013, Plaintiff was sent a letter from Defendant Hay, SQSP Appeals Coordinator, and R. Goudeau-Baxter from the SQSP Inmate Appeals Office, entitled "RE: Screening at the FIRST level," stating:

> The enclosed documents are being returned to you for the following reasons:
>
> Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(15). You have submitted the appeal for processing at an inappropriate level bypassing required lower level(s) of review.
>
> On 11/7/12 you were seen by your primary care provider at [SQSP] and received CDC-1845. You were removed from ADA/DNM status and place[d] on ADA/DPM. You have several housing restrictions and medical restrictions that do not allow you to be housed properly at [SQSP] per ADA/*Armstrong* guides for your own safety.
>
> [SQSP] is not responsible [for] how you were housed at layovers (CTF or CIM) until you arrived at [RJDCF].

*Id.* At the bottom of the letter, the Appeals Coordinators further instructed as follows:

> Be advised that you cannot appeal a rejected appeal, but [you] should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate

---

[17] Because CSQ-B-13-0402 was only pursued (and rejected) at the first level of appeal, the Court did not include it in its earlier summaries of exhausted grievances.

*Id.*  As explained above, because CSQ-B-13-0402 seemed to address alleged wrongdoing at another prison, Defendant  Hay rejected CSQ-B-13-0402, returned the appeal to Plaintiff, and advised him that the appeal had been submitted to an inappropriate level (i.e., SQSP instead of the other prison), bypassing the lower levels of review. *Id.*

Plaintiff disagreed with Defendant Hay's rejection of CSQ-B-13-0402.  However, instead of taking "corrective action necessary" and resubmitting CSQ-B-13-0402, Plaintiff submitted yet another appeal to SQSP, log. no. CSQ-C-13-00746.  *Id.* at 6.

### (ii)     Appeal Log No. CSQ-C-13-00746/RJD-A-13-2164

Plaintiff submitted appeal log no. CSQ-C-13-00746/ RJD-A-13-2164 ("CSQ-C-13-00746/ RJD-A-13-2164"), dated February 28, 2013, claiming that Defendant Hay had improperly ejected the earlier appeal, CSQ-B-13-0402.  *Id.*  In CSQ-C-13-00746/ RJD-A-13-2164, Plaintiff raised issues that he did not raise in his earlier appeal, CSQ-B-13-0402.  *Id.*  For example, CSQ-C-13-00746/ RJD-A-13-2164 complained of an "improperly motivated transfer," that the UCC refused to postpone a hearing to allow a medical reevaluation, that the UCC denied him an opportunity to file a "transfer appeal," and the UCC hearing was held in Sergeant Wingo's department (who, as mentioned above, was the defendant in another lawsuit filed by Plaintiff).  *Id.* at 8.  However, CSQ-C-13-00746/ RJD-A-13-2164 was rejected at the first level of review on two different dates (March 12, 2013 and May 2, 2013) and cancelled on June 10, 2013.  *Id.* at 8, 10, 14, 15.  Without elaborating on the rejections, it seems that SQSP staff rejected and returned the CSQ-C-13-00746 to Plaintiff on two occasions for the following reasons: that it was incomplete (on March 12, 2013); and contained an attached appeal that needed to be removed (on May 2, 2013).  *Id.* at 10, 14.  Plaintiff was also granted additional time to resubmit the appeal to correct the aforementioned deficiencies.  *Id.*  Specifically, in the March 12, 2013 letter, Defendant Hay advised Plaintiff that he did not attach the necessary supporting documents as required, and explained what documents Plaintiff needed to attach to his new appeal, in accordance with Title 15 of the California Code of Regulations.  *Id.* at 10.  The Court notes that prison regulations require an inmate to obtain and attach all supporting documents that are necessary for the resolution of his appeal before

33

submitting the appeal. *See* Cal. Code Regs. tit. 15, § 3084.3(a). Defendant Hay provided Plaintiff an additional thirty days from March 12, 2013—or no later than April 11, 2013, so that Plaintiff could obtain and submit the supporting documents. Dkt. 1-9 at 10. Thus, the record shows that Plaintiff had the opportunity and additional time to properly submit his grievance to the correct prison and with the required documentation. *Id.* Despite this, Plaintiff failed to timely resubmit his inmate appeal by the April 11, 2013 deadline set by Defendant Hay. *Id.* Here, Plaintiff admits he missed the deadline, because he states that he did not send his appeal until April 12, 2013. Dkt. 1 at 36. Moreover, SQSP did not receive his appeal until April 17, 2013. Dkt. 1-9 at. 15. Therefore, it was cancelled as untimely. *Id.* At the bottom of Defendant Hay's June 10, 2013 cancellation letter, the usual instruction is included:

> Be advised that you cannot appeal a rejected appeal, but [you] should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

*Id.* The record shows that instead of following the instructions that a cancelled appeal may ***not*** be resubmitted, Plaintiff nevertheless re-submitted CSQ-C-13-00746 on July 7, 2013 by typing his challenge on the bottom of the June 10, 2013 cancellation letter and stating that he "believe[d] that the prior determination was made in error." *Id.* Therefore, on August 9, 2013, his re-submitted appeal was returned to him because it was determined that he was "attempting to submit an appeal that ha[d] been previously cancelled." *Id.* at 17.

### (iii) Analysis Relating to Plaintiff's Burden of Proving Unavailability of Administrative Remedies as to His First Amendment Claim

The Court finds that between the two appeals that Plaintiff argues are relevant to his First Amendment Claim, only the second one, CSQ-C-13-00746, may be considered because it lists claims related to his First Amendment claims. However, the undisputed evidence demonstrates that Defendant Hay properly cancelled CSQ-C-13-00746, because Plaintiff failed to comply with the prison's timeliness requirements. Because the "cancellation" of an appeal "does not exhaust

34

administrative remedies," *see* Cal. Code Regs. tit. 15, § 3084.1(b), the evidence submitted by Defendants satisfies the initial burden of proving that there were available administrative remedies for Plaintiff, and that Plaintiff failed to exhaust those remedies properly, *see Albino*, 747 F.3d at 1172. Thus, Defendants have met their burden to show unexhaustion of Plaintiff's First Amendment Claim.

Having adequately shown that there were available administrative remedies that Plaintiff did not exhaust fully, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166. As mentioned above, improper screening of a prisoner's administrative grievances may excuse a failure to exhaust. *See Sapp,* 623 F.3d at 822-23. Again, the prisoner must demonstrate "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

Here, it is possible that Plaintiff could meet first *Sapp* factor, as shown by his attempt to file CSQ-C-13-00746, which arguably could have sufficed to exhaust some of his First Amendment claims. *See id.* However, as explained above, CSQ-C-13-00746 was cancelled as untimely under prison regulations. *See* Cal. Code Regs. tit. 15, §§ 3084.6(c)(4), 3084.8(b)(1). Therefore, in order to satisfy the second *Sapp* factor, Plaintiff must show that prison officials rejected and cancelled CSQ-C-13-00746 for reasons inconsistent with applicable regulations. *See Sapp*, 623 F.3d at 823-24. As mentioned above, the cancellation of an untimely appeal is consistent with applicable regulations. *See* Cal. Code Regs. tit. 15, § 3084.6(c)(4). Once cancelled, an appeal shall ***not*** be accepted except pursuant to section 3084.6(a)(3), which provides that "[a]t the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that the cancellation was made in error or new information is received which makes the appeal eligible for further review." *Id.* § 3084.6(a)(3). Here, no such determination of error was made and the cancelled CSQ-C-13-00746 was not

1  eligible for further review.  Plaintiff was advised that he could file a separate appeal on the

2  cancellation decision, but he did not do so and instead incorrectly attempted to re-submit a

3  cancelled appeal.

4       Accordingly, the Court finds that Defendants have met their ultimate burden as the moving

5  party by setting forth evidence to demonstrate Plaintiff's non-exhaustion as to his First

6  Amendment claim.  In his opposition, Plaintiff failed to offer any evidence that Defendants

7  handled his aforementioned appeals improperly and failed to dispute that Defendants gave him

8  multiple opportunities to submit a complete and *timely* appeal.  *See* Dkt. 74.  And, as explained

9  above, Plaintiff did not challenge the June 10, 2013 cancellation letter properly.  Nor did he make

10  any attempts to file a separate appeal on the cancellation decision.  Thus, Plaintiff's filing of CSQ-

11  C-13-00746 did not exhaust properly his administrative remedies.  *See Woodford*, 548 U.S. at 90

12  (proper exhaustion requires using all steps of an administrative process and complying with

13  "deadlines and other critical procedural rules").

14       In sum, Defendants have met their ultimate burden as the moving party by setting forth

15  evidence to demonstrate Plaintiff's non-exhaustion as to his First Amendment and due process

16  claims.  Defendants also have shown adequately that there were available administrative remedies

17  that Plaintiff did not exhaust fully as to these claims.  Accordingly, Defendants also are entitled to

18  summary judgment based on Plaintiff's failure to exhaust administrative remedies as to his First

19  Amendment and due process claims, and the motion is GRANTED on this ground as well.

20  **III.**  **DEFENDANTS' MOTION TO DISMISS STATE LAW CLAIMS**

21       Plaintiff has asserted supplementary state law claims that the actions of Defendants

22  violated the rights afforded to him by California statutory law.

23       When adjudicating a supplemental state law claim, the federal courts must apply state

24  substantive law.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  The California

25  Tort Claims Act ("CTCA") requires that a tort claim against a public entity or its employees be

26  presented to the California Victim Compensation and Government Claims Board, formerly known

27  as the State Board of Control, no more than six months after the cause of action accrues.  *See* Cal.

28  Gov't Code §§ 905.2, 910, 911.2, 945.4, 945.6(a), 950-950.2, 950.6(b).  Presentation of a written

1    claim and action on, or rejection of, the claim are conditions precedent to a suit.  *Mangold v.*

2    *California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

3         Defendants assert that Plaintiff has failed to comply with the California Government

4    Claims Act as to his state law claims.  Dkt. 47 at 25.  This Court agrees.  As mentioned above, the

5    California Government Claims Act provides that a claim relating to an injury to a person must be

6    presented no later than six months after the accrual of the cause of action.  First, Plaintiff has not

7    alleged that he complied with the Claims Act's requirements in either his complaint or opposition,

8    and there is no evidence that he submitted any claim to the California Victim Compensation and

9    Government Claims Board. *See generally* Dkts. 1, 47; *see also* Maiorino Decl., Ex. A.[18]  Thus, the

10   Court finds that Plaintiff has failed to comply with the CTCA, and therefore Plaintiff's state law

11   claims are DISMISSED.

12        Accordingly, the Court GRANTS Defendants' motion to dismiss as to Plaintiff's

13   supplementary state law claims.

14   **IV.    CONCLUSION**

15        For the reasons outlined above, the Court orders as follows:

16        1.       Defendants' request for judicial notice is GRANTED.  Dkt. 53.

17        2.       Plaintiff's request for a seventh extension of time to file a complete opposition is

18   DENIED.  Dkt. 77.

19        3.       Defendants' Motion for Summary Judgment and Motion to Dismiss are

20   GRANTED as to all claims.  Dkt. 47.

21        Specifically, Defendants' motion for summary judgment is GRANTED based on

22   Plaintiff's failure to exhaust administrative remedies as to all his federal claims.   Therefore,

23   Plaintiff's federal claims in his complaint are DISMISSED without prejudice to refiling after

24   exhausting California's prison administrative process.  *See McKinney v. Carey*, 311 F.3d 1198,

25   1200-01 (9th Cir. 2002) (proper course in claims dismissed due to failure to exhaust administrative

26

27        _____
             [18] Courts may take judicial notice of records and reports of administrative bodies,
28   including documents from the California Victim Compensation and Government Claims Board.
     *See Marsh v. San Diego County*, 432 F. Supp. 2d 1035, 1043-45 (S.D. Cal. 2006).

remedies is dismissal without prejudice to refiling). Meanwhile, Defendants' motion to dismiss is GRANTED as to Plaintiff's supplementary state law claims because Plaintiff has failed to comply with the CTCA.

4. The Clerk of the Court shall terminate all pending motions and close the file. All parties shall bear their own costs.

5. This Order terminates Docket Nos. 47, 53, and 77.

IT IS SO ORDERED.

Dated: September 21, 2017

_____
YVONNE GONZALEZ ROGERS
United States District Judge